RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

LARRY CROUCH, RHONDA MAE CROUCH,
TEDDY LEE HUDSON, and CAROLYN SUE
HUDSON,

          *Plaintiffs-Appellants*,

     *v.*

HONEYWELL INTERNATIONAL, INC., et al.,

          *Defendant*s,

AVCO CORPORATION,

          *Defendant-Appellee.*

No. 12-5775

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:07-cv-00638—Charles R. Simpson III, District Judge.

Decided and Filed: May 14, 2013

Before: DAUGHTREY, McKEAGUE and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** William R. Garmer, Jerome P. Prather, GARMER & PRATHER, PLLC,
Lexington, Kentucky, Matthew C. Minner, HARE, WYNN, NEWELL AND NEWTON,
LLP, Birmingham, Alabama, for Appellants. Larry C. Deener, Elizabeth A. Deener,
LANDRUM & SHOUSE LLP, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. This case stems from a plane crash that resulted in
serious injuries to both pilot and passenger. Among various claims against numerous
defendants, plaintiffs allege that the aircraft engine manufacturer is liable for negligently
failing to warn airplane owners and operators, and failing to notify regulatory authorities,

of defects in the engine and its components.  In granting the defendant manufacturer's motion for summary judgment, the district court held that plaintiffs' allegations failed to make out a claim in avoidance of the applicable period of repose.  The court also denied plaintiffs' post-judgment motion for leave to file a first amended complaint, concluding the asserted "newly discovered evidence" was not newly discovered.  On appeal, plaintiffs challenge the district court's application of the General Aviation Revitalization Act and contend the court improperly denied them opportunity to continue discovery.  For the reasons that follow, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

On November 21, 2006, Larry Crouch was piloting his Piper Lance II single-engine airplane on a trip from Mayfield to Frankfort, Kentucky, with Teddy Lee Hudson as passenger.  After losing engine power at an altitude of 5000 feet, and finding it impossible to reach an airport, Crouch made a forced landing in a field near Bardstown.  Both occupants survived but suffered serious permanent injuries, including paraplegia.

According to at least one of plaintiffs' theories, investigation of the crash indicated the loss of power was caused by detachment of the magneto from the engine, due to a fractured mounting flange.  The magneto generates the electrical charge needed to fire the spark plugs that power the engine.  The engine was manufactured in 1978 by Lycoming Engines, a subsidiary of defendant AVCO Corporation.  The magneto, a rebuilt component, was installed by John Jewell Aircraft, Inc. during a 2005 overhaul of the engine.[2]  According to Jewell Aircraft, the overhaul was performed in accordance with the Lycoming Overhaul Manual.

Crouch and Hudson, along with their wives, Rhonda Mae Crouch and Carolyn Sue Hudson, commenced this action in November 2007, suing multiple defendants who

---

[1]Plaintiffs' version of the facts is essentially accepted as true for purposes of our review of the relevant legal issues.

[2]The rebuilt magneto was manufactured by Teledyne Continental Motors, Inc.  Plaintiffs sued Teledyne in the Southern District of Alabama on defective design and manufacture and failure to warn claims. Jewell Aircraft is a named defendant in this action.  Proceedings on plaintiffs' claims against Jewell Aircraft and other defendants are ongoing in the district court.

were allegedly involved in the manufacture and maintenance of the aircraft and its engine, including AVCO. Their complaint sets forth a single claim in negligence against all defendants, in broad, general terms:

> Defendants, . . . in the ordinary course of their business, had a duty to exercise reasonable care in the design, engineering, testing, manufacture, installation, assembly, maintenance and overhaul of the engine, its components and accessories, and to generate and publish warnings, manuals and other product support material relating to the said engine, its components and accessories.

R.1 Complaint ¶ 24, p.8, Page ID #9. Plaintiffs allege that the defendants breached this duty by:

> a. Failing to reasonably design, engineer, test, manufacture, install, assemble, maintain and/or overhaul the engine, its components and accessories;
>
> b. Failing to adequately warn the owners and operators of the defects in the engine, its components and accessories;
>
> c. Failing to reasonably and adequately notify the regulatory authorities including the Federal Aviation Administration ("FAA") of the defects in the engine, its components and accessories;
>
> d. Failing to correct known defects in the engine, its components and accessories; and
>
> e. Unreasonably representing, certifying, and/or warranting as airworthy the aircraft, the engine, its components and accessories.

*Id.* at ¶ 25, p.9, Page ID #10.

In relation to AVCO's asserted liability, plaintiffs contend the engine failure resulted from the separation of the magneto installed during an overhaul performed according to instructions in a manual AVCO was obliged to publish and update. Plaintiffs' theory, not specifically set forth in the complaint, is that the overhaul manual instructions were flawed due to AVCO's negligence.

In December 2009, AVCO moved for summary judgment based on the General Aviation Revitalization Act of 1994 ("GARA"), 49 U.S.C. § 40101 Notes. AVCO

argued that GARA's 18-year period of repose bars plaintiffs' negligence claim against AVCO based on actions taken in its capacity as manufacturer because the engine was manufactured in 1978, twenty-eight years before the plane crash. In response, plaintiffs emphasized that the court had permitted only limited discovery up to that point, which had handicapped them in their ability to respond to the time-bar defense. They maintained that AVCO's motion was premature. Plaintiffs also contended (1) that GARA does not apply because AVCO is not sued in its capacity as a manufacturer but as a manual publisher; (2) that even if GARA applies, the revised overhaul manual represents a replacement "part" or "component," the issuance of which triggered a new 18-year period; and (3) that incomplete discovery had revealed that another potential exception to the time-bar may apply (i.e., that AVCO had knowingly misrepresented or withheld required information from the Federal Aviation Administration).

The district court originally denied AVCO's motion for summary judgment on July 12, 2010. In doing so, however, the court narrowed the scope of plaintiffs' surviving claim against AVCO. The court ruled that the revised overhaul manual is not a "part" of the aircraft such as would give rise to a new 18-year period. Yet, the court ruled that the GARA time-bar did not come into play anyway, because AVCO was not sued in its capacity as a manufacturer, but rather for actions taken as an overhaul manual publisher. Finally, the court rejected the notion that plaintiffs' complaint contained sufficiently specific allegations of knowing misrepresentation or withholding of required information by AVCO to warrant further proceedings on such a theory. Thus, while nominally denying AVCO's motion, the court concluded its ruling in a manner that limited further proceedings to plaintiffs' claim of "negligent overhaul-manual authorship."

AVCO moved for reconsideration, but plaintiffs did not. On November 1, 2010, the district court changed its ruling, concluding that because AVCO was required by law to produce maintenance and overhaul manuals in conjunction with its manufacturing of aircraft parts, AVCO, for purposes of its alleged liability in this case, was acting in its capacity as a manufacturer. The court thus held that plaintiffs' claim against AVCO was

barred by GARA's 18-year rule, because the engine for which AVCO published the overhaul manual was manufactured more than eighteen years prior to the plane crash. The court expressly noted that this reconsideration did not alter its earlier determination that the revised overhaul manual is not a "part" that could be deemed to restart the period of repose.

On November 29, 2010, plaintiffs moved for reconsideration of the court's order granting summary judgment to AVCO and moved for leave to file a first amended complaint so as to specifically set forth their claim for misrepresentation or withholding of required information. These motions remained under advisement in March 2011, when plaintiffs moved to supplement the motions with newly discovered evidence showing that AVCO published a service instruction on February 11, 2011, detailing the correct procedure for attaching the magneto installation hardware. The district court finally ruled on August 17, 2011, granting the motion to supplement, but nonetheless denying the motions for reconsideration and for leave to amend.

Plaintiffs filed their notice of appeal on September 14, 2011, but the appeal was dismissed *sua sponte* on January 19, 2012, for lack of proper "final judgment" certification under Fed. R. Civ. P. 54(b). The district court subsequently issued an improved Rule 54(b) certification, explaining why its interlocutory summary judgment order disposing of plaintiffs' action against AVCO is final and appealable under the standard prescribed in *Corrosioneering v. Thyssen Envitl. Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986). Plaintiffs immediately filed another notice of appeal, challenging the summary judgment ruling and denial of reconsideration. The district court's supplemental Rule 54(b) order is facially sufficient and we are satisfied that appellate jurisdiction is properly exercised in this case.

## II. ANALYSIS

### A. Standard of Review

An order granting summary judgment is subject to de novo review. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Before ruling on a summary judgment motion, the district court must afford the parties adequate time for discovery, in light of the circumstances of the case. *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995). The reviewing court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *White*, 533 F.3d at 390. Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the non-movant must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The dispute must present a *genuine* issue of *material* fact. A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id.* at 298-99.

Likewise, the district court's denial of plaintiffs' motion for reconsideration of the summary judgment ruling is reviewed de novo. *Medical Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 389-90 (6th Cir. 2008). However, the district court's "refusal to consider evidence produced for the first time on a motion to reconsider will be reversed only if the refusal constitutes an abuse of discretion." *Id.* (quoting *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003)).

**B. Relevant GARA Provisions**

The relevant provisions of the General Aviation Revitalization Act provide as follows:

**Section 2.  Time limitations on civil actions against aircraft manufacturers.**

(a) In general.—Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—

(1) after the applicable limitation period beginning on—

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

(b) Exceptions.—Subsection (a) does not apply—

(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.

49 U.S.C. § 40101 Notes, § 2.

### C.  "Capacity as a Manufacturer"

On reconsideration, the district court held that AVCO, by publishing the overhaul manual, was acting in its "capacity as a manufacturer" within the meaning of GARA. The court noted that FAA regulations require manufacturers of aircraft and aircraft parts to follow an extensive certification process requiring them to produce instructions to

assist in the continuing maintenance and overhaul of the engine. The court viewed production of the manual as an essential element in the overall process of creating a product that satisfies FAA regulations. Plaintiffs' claim against AVCO for negligence in the publication of the manual was thus held to trigger application of GARA and its 18-year period of repose.

The district court's conclusion is in accord with decisions from other jurisdictions. *See Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1157 (9th Cir. 2000) (applying GARA and holding that a flight manual, required by federal regulations, is an integral part of an aircraft which, if defective, can subject manufacturer to liability as manufacturer); *Schamel v. Textron-Lycoming, a Div. of Avco Corp.*, 1 F.3d 655, 657 (7th Cir. 1993) (applying analogous Indiana statute of repose and holding publication of service manual was integral to manufacturer's duties as manufacturer); *Estate of Grochowske v. Romey*, 813 N.W.2d 687, 696-700 (Wis. App. 2012) (manufacturer fulfilling legal obligation to provide maintenance manual held to be acting in its capacity as manufacturer under GARA); *Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 550-51 (Iowa 2002) (holding manufacturer who published maintenance manual acted in its capacity as manufacturer under GARA, stating, "[a]ny other interpretation would subject manufacturers to liability on failure-to-warn claims without regard to the statute of repose, thereby thwarting Congress's objective in enacting the statute."); *Alter v. Bell Helicopter Textron, Inc.*, 944 F. Supp. 531, 540-41 (S.D. Tex. 1996) (recognizing manufacturer's provision of maintenance manual to be part of its duty as manufacturer).

Plaintiffs contend the district court erred. They rely primarily on a legislative report which clarifies the meaning of GARA § 2(a). The report reads:

> The latter limitation [i.e., on suits brought against a manufacturer in its capacity as a manufacturer] is intended to insure that parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity. For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such act was a proximate cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic.

H.R. Rep. 103-525 (II), *reprinted in* 1994 U.S.C.C.A.N. 1644 (Section-by-Section Analysis) (June 24, 1994). Plaintiffs argue this legislative history underscores the plain meaning of GARA's language, making it clear that manufacturers of aircraft and aircraft parts are not protected by the period of repose for tortious conduct committed in a capacity other than as manufacturer. Plaintiffs insist that AVCO's publication of the overhaul manual was undertaken in a capacity other than as a manufacturer.

The problem with this argument is that it finds no support in the case law. As indicated above, it has become generally accepted that performance of a manufacturer's federally mandated duty to publish flight and maintenance manuals is conduct undertaken in the capacity of a manufacturer. Plaintiffs' legislative-history based argument was directly addressed and rejected in *Mason*, 653 N.W.2d at 551-52. Plaintiffs have cited no contrary authority. A manufacturer who *chooses* to also conduct business as a mechanic is different than a manufacturer who is *required* by federal regulation to publish maintenance and overhaul manuals for all products that it manufactures.[3]

Further support for the proposition that publication of a maintenance or overhaul manual is action taken in the "capacity as a manufacturer" is derived from the plain language of GARA itself. One of the exceptions to the operation of the period of repose, GARA § 2(b)(1), pertains to claims resulting from a manufacturer's duty to disclose pertinent information, such as maintenance issues affecting airworthiness, to the FAA. Disclosure of such information is required and withholding or misrepresentation of such information may expose the manufacturer to liability under § 2(b)(1) notwithstanding

---

[3]In their reply brief, plaintiffs attempt to distinguish AVCO's responsibilities as a type certificate holder from its responsibilities as a manufacturer. They argue that AVCO's publication of the overhaul manual was in its capacity as a type certificate holder. This argument, too, has been rejected in the case law. The federal regulations prohibit the manufacturing of an aircraft or certain parts unless the manufacturer is the type certificate holder for that model aircraft. By virtue of acquisition of a type certificate, an entity other than the original manufacturer steps into the shoes of the original manufacturer in relation to the manufacturer's obligations under the regulations. *See* 14 C.F.R. § 21.50 (requiring the current holder of a type certificate to make available all "changes to the Instructions for Continued Airworthiness . . . to any person required . . . to comply with those instructions."). The type certificate holder is, in the eyes of the FAA, the current manufacturer, and thus the type certificate holder should not be denied the protections of GARA as a manufacturer. *See Burton v. Twin Commander Aircraft LLC*, 254 P.3d 778, 784-85 (Wash. 2011); *S. Side Trust & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 927 N.E.2d 179, 203-04 (Ill. App. 2010); *Mason*, 653 N.W.2d at 548–49; *Pridgen v. Parker Hannifin Corp.*, 904 A.2d 422, 435 (Pa. 2006).

the otherwise applicable period of repose.  If Congress did not view a manufacturer's duty to publish and update maintenance manuals as falling within its "capacity as a manufacturer," then there would arguably have been no need for Congress to include § 2(b)(1) as an exception.

In sum, the district court's holding that AVCO is sued in its capacity as a manufacturer is supported by the extant case law, which we find persuasive. Accordingly, we find no error.

### D.  New Period of Repose

If AVCO is deemed to have been sued for conduct in its capacity as a manufacturer, plaintiffs contend each revision of the overhaul manual is sufficiently analogous to a replacement part of the aircraft under  GARA § 2(a)(2) to trigger a new 18-year period of repose.  Under § 2(a)(2), a new 18-year period of repose begins "with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, . . . beginning on the date of completion of the replacement or addition."  49 U.S.C. § 40101 Notes, § 2(a)(2).  If the overhaul manual is deemed to be such an integral part of the aircraft as to render its publication an action taken in the capacity of a manufacturer, plaintiffs contend the manual must be deemed to be a part of the aircraft and any revision of the manual that caused plaintiffs' injuries a replacement part.

The district court rejected this argument in its original summary judgment ruling, citing *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 276-77 (4th Cir. 2007) (holding a maintenance manual, in contrast to a flight manual, is not a "part of the aircraft.").  When the court later reconsidered and held that AVCO was sued as a manufacturer, it expressly declined to revisit its earlier ruling that the manual was not a part of the aircraft.  The court characterized the manual as "a required accessory," not a "part" whose modification would restart the statute of repose.  Further, in denying plaintiffs' subsequent motion for reconsideration, the court reasoned that holding the manual revision to be a replacement part triggering a new period of repose would allow

plaintiffs to circumvent the 18-year period of repose applicable to a design flaw claim simply by couching their claim in terms challenging the manual's adequacy to correct the flaw.

> Importantly, the court added the following:

> The plaintiffs do not point to any portion of the manual that contained the *wrong* instructions for the overhaul, nor do they point to any previously existing warning that was negligently deleted. Rather, their entire claim vis a vis the manual rests on their claim that the manual, and subsequent service bulletins, failed to provide any warning that the magneto assembly in Crouch's plane might come loose. This is precisely the sort of action that GARA forbids.

R. 247, Memorandum Opinion at 6-7, Page ID # 2549-50 (footnote and citations omitted). The court thus implied that even if the overhaul manual could be deemed a part of the aircraft, a new 18-year period would not have been triggered because plaintiffs had adduced no factual substantiation for their theory that the revised overhaul manual Jewell Aircraft purportedly relied on was flawed in some specific way, by virtue of an addition or a deletion, that was causally linked to the plane crash. The overhaul manual was revised several times within eighteen years prior to plaintiffs' crash, as recently as 2002. However, plaintiffs have persistently failed to identify any specific defect in any particular revision as causally related to the plane crash. Absent such factual support, the court remained unpersuaded that plaintiffs had established grounds to alter or amend the summary judgment ruling.

There is little case law addressing whether an *overhaul* manual is a part of the aircraft within the meaning of GARA § 2(a)(2). In *Caldwell*, 230 F.3d at 1156-58, the Ninth Circuit relied on the text of the statute, specifically the words "originally in, or which was added to, the aircraft," in holding that a *flight* manual, because it is required by law to be on board the aircraft, is a part within the meaning of GARA. However, in *Alter*, 944 F. Supp. at 538-41, the court rejected the argument that a *maintenance* manual revision was a replacement part within the meaning of GARA § 2(a)(2). In reaching this conclusion, the *Alter* court also relied on the statutory language, holding that the maintenance manual was *not* a part "originally in" or "added to" the aircraft. *Id.* at 538.

The court noted that its holding was consistent with holdings of several federal courts applying state statutes of repose similar to GARA, citing *Schamel*, 1 F.3d at 657; *Alexander v. Beech Aircraft Co.*, 952 F.2d 1215, 1220-21 (10th Cir. 1991); *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1135 (6th Cir. 1986); *Butchkosky v. Enstrom Helicopter, Inc.*, 855 F. Supp. 1251, 1257 (S.D. Fla. 1993). *See also Colgan*, 507 F.3d at 276-77 (relied on in the district court's original ruling that the overhaul manual was not a part).

This case involves an overhaul manual, which is more akin to the maintenance manual discussed in *Alter* and dissimilar to the flight manual discussed in *Caldwell*. The reasoning employed in both *Caldwell* and *Alter* thus tends to support the notion that the overhaul manual is not a part because it was not "originally in, or . . . added to, the aircraft." Furthermore, the duty of a manufacturer to publish and update manuals derives from its manufacturing of the original aircraft or part. GARA specifically bars lawsuits arising out of defects in an aircraft part that is more than eighteen years old. This bar logically includes suits for a failure to warn about latent defects in such parts. If claims for negligently *failing* to warn in manual revisions were not barred by GARA's period of repose, plaintiffs could artfully plead suits arising out of design defects as "failure to warn" claims, thereby defeating Congress's intent. *See Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088 (9th Cir. 2001) (rejecting notion that failure to warn of a newly perceived problem in revised manual is analogous to a replacement part triggering new period of repose); *Mason*, 653 N.W.2d 552-53 (same).[4]

In sum, the available case law authority predominantly supports the district court's ruling that the revised overhaul manual relied on by Jewell Aircraft is not a replacement part of the aircraft. We find this case law persuasive and therefore find no error in the  district court's refusal to alter this ruling on reconsideration.

---

[4]Moreover, a claim alleging that a manufacturer *knowingly* misrepresented required information to the FAA, or concealed or withheld required information from the FAA, and *knowingly* published an inaccurate or otherwise inadequate maintenance manual, which alteration or deletion causally contributed to a subsequent accident) would be exempt from the GARA period of repose under § 2(b)(1).

Moreover, even accepting the possibility that overhaul manual revisions issued during the eighteen years immediately prior to plaintiffs' crash *could* be deemed replacement parts of the aircraft, we find, as the district court concluded, that plaintiffs have neither alleged nor substantiated the existence of any affirmative deletion from or addition to the revised manual that causally contributed to the crash. Absent such a causal nexus between the replaced part and the complained of injuries, § 2(a)(2) does not operate to trigger a new period of repose.

As the court noted in *Caldwell*, 230 F.3d at 1158, "[a] revision to the manual does not implicate GARA's rolling provision, however, unless the revised part 'is alleged to have caused [the] death, injury, or damage.'" The language of § 2(a)(2) refers to the specific "part which replaced another . . . part . . . and which is alleged to have caused such death, injury, or damage." Section 2(a)(2) cannot be reasonably construed as meaning that the 18-year period of repose for the entire engine is reset every time a single sub-part is replaced. Other courts have likewise held that neither a mere modification (i.e., something short of replacement) of a part, nor a replacement of less than the whole part or all components of a system will trigger a new period of repose under GARA. *See Inmon v. Air Tractor, Inc.,* 74 So.3d 534, 538 (Fla. App. 2011); *Hiser v. Bell Helicopter Textron Inc.*, 111 Cal. App. 4th 640, 650-51 (2003). In order to trigger a new period of repose, the facts must show (1) that AVCO made a substantive change in (i.e., alteration of or deletion from) the overhaul manual instructions relating to parts and method for attaching the magneto to the engine, and (2) that the change was the proximate cause of the crash. *See Caldwell*, 230 F.3d at 1158; *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 661-62 (E.D. Pa. 2004).

The version of the overhaul manual in the record, current through 2007 revisions, occupies some 174 pages. It is technical and detailed. Yet plaintiffs have not identified *any* specific provision, to which language has been added or from which language has been deleted in the eighteen years prior to 2006, relating to magneto installation procedures, that caused the crash. Instead, plaintiffs argue that because part of the manual was revised as recently before the crash as 2002; and Jewell Aircraft purportedly

followed the then current manual instructions when it installed the rebuilt magneto in 2005; and the installation proved to be somehow defective (in that the flange failed and the magneto separated from the engine in flight); the manual must have lacked sufficiently detailed instructions to ensure proper installation. In other words, plaintiffs have not shown or even alleged that the revised manual contained a substantive alteration—addition or deletion—that caused harm. Rather, their theory is that a needed substantive alteration was *not* included. Plaintiffs find themselves in the awkward position of arguing that an *omission*, something that does not exist, should be treated as something that does exist and was added on as a replacement "part of the aircraft." Plaintiffs ask the court to treat something that was not added as though it were something that was added and as though this fictional something caused the crash.

Section 2(a)(2) only operates to reset the period of repose if a manual revision including substantively altered magneto installation instructions was a "replacement or addition." GARA § 2(a)(2). Plaintiffs have not made this case—either by allegation or evidence. Accordingly, irrespective of whether a manual revision *may* properly be considered part of the aircraft under GARA § 2(a)(2) in the abstract, we find no error in the district court's conclusion that plaintiffs have not made out a claim in avoidance of the 18-year period of repose in this case.

**E. Knowing Misrepresentation or Withholding**

Finally, plaintiffs challenge the district court's refusal to recognize their evidence of AVCO's knowing misrepresentation or withholding of required information from the FAA as an exception to the time-bar under GARA § 2(b)(1). Under § 2(b)(1), the period-of-repose limitation does not apply "if the claimant pleads with specificity the facts necessary to prove . . . the manufacturer . . . misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft." 49 U.S.C. § 40101 Notes, § 2(b)(1).

In its first summary judgment ruling, the district court rejected plaintiffs' attempt to invoke this exception to the time-bar, summarily concluding that their complaint did

not contain sufficiently specific allegations of knowing misrepresentation, concealment or withholding.  Yet, the court reduced this conclusion to the status of dictum when it went on to rule that GARA was not applicable because AVCO was not sued as a manufacturer.  It was only after the district court reversed itself, held GARA does apply, and granted AVCO summary judgment, that the § 2(b)(1) exception became potentially relevant again.

Plaintiffs then moved for reconsideration of the ruling on the § 2(b)(1) exception based on their proposed amended complaint, which included more specific allegations of AVCO's knowledge and withholding of required information from the FAA.  The district court denied the motion, observing that a post-judgment motion for leave to amend must meet a stringent standard.  The court reasoned that the newly discovered evidence plaintiffs relied on was not newly discovered and their failure to earlier seek amendment was not excused by any "compelling explanation."

Plaintiffs' original complaint clearly failed to plead sufficiently specific facts to invoke the § 2(b)(1) exception.  Paragraph 25(c) alleges generally that AVCO "fail[ed] to reasonably and adequately notify the regulatory authorities, including the Federal Aviation Administration, of the defects in the engine, its components and accessories." R. 1 Complaint at 9, Page ID # 10.  Nowhere in the complaint did plaintiffs plead *specific* facts, as required by § 2(b)(1), to support a claim that AVCO was responsible for knowing misrepresentation, concealment, or withholding of required information. Hence, the viability of the § 2(b)(1) exception was contingent on plaintiffs' obtaining leave to amend the complaint.  This was made clear in the district court's initial summary judgment ruling.  Accordingly, the district court correctly determined that plaintiffs' later motion for reconsideration was "intertwined" with their motion for leave to amend.  Absent leave to amend, there would be no basis for concluding that plaintiffs had pleaded sufficiently specific facts to satisfy § 2(b)(1).

The district court also correctly recognized that plaintiffs' post-judgment motion for leave to amend was governed by the same standard as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).  *Leisure Caviar, LLC v. U.S. Fish & Wildlife*

*Serv.*, 616 F.3d 612, 615-16 (6th Cir. 2010). The court was bound to "consider the competing interest of protecting the finality of judgments and the expeditious termination of litigation." *Id.* "If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision.'" *Id.* at 616 (quoting *James v. Watt*, 716 F.2d 71, 78 (1st Cir.1983)). The court correctly noted that relief could be warranted upon a showing of "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." R. 247, Memorandum Opinion at 3, Page ID # 2546 (quoting *Leisure Caviar*, 616 F.3d at 615). Further, the court noted, "[a] claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion." *Id.* at 4-5 (quoting *Leisure Caviar*, 616 F.3d at 617).

Despite this procedural posture, plaintiffs have not directly challenged the denial of leave to amend. If they had, review of the district court's denial of the motion would be reviewed for abuse of discretion, *see Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000), and reversal would be appropriate only if we were left with the "definite and firm conviction that the district court committed a clear error of judgment in its conclusion." *Lewis v. United Joint Venture*, 691 F.3d 835, 839 (6th Cir. 2012) (quoting *In re Scrap Metal Litig.*, 527 F.3d 517, 528 (6th Cir. 2008)). Realizing, ostensibly, that they could hardly meet this standard, plaintiffs characterize their challenge to the district court's handling of the § 2(b)(1) exception as questioning "whether the district court abused its discretion by failing to explain why certain critical evidence did not trigger GARA's 2(b)(1) exception." Appellants' Br. at 2. This question conveniently avoids the rationale for the district court's denial of leave to amend. The court declined to reach the merits of the "critical evidence" because plaintiffs failed to satisfy the threshold requirement of a compelling explanation for not seeking leave to amend prior to entry of judgment. In doing so, the court gave controlling weight to the "interest of protecting the finality of judgments and the expeditious termination of litigation." *Leisure Caviar*, 616 F.3d at 615-16.

This is an interest plaintiffs prefer to ignore. They do not contend that the denial of leave to amend was based on a clear error of law. Nor do they contend that late leave to amend was justified by an intervening change in controlling law. Nor do they contend that reversal is necessary to prevent a manifest injustice. Plaintiffs do not even take issue with the court's findings that their evidence was not newly discovered and that they had no compelling explanation for not trying to amend earlier. Instead, plaintiffs argue that "for all practical purposes, plaintiffs pled the necessary allegations *and* evidence sufficient to trigger GARA 2(b)(1) in a timely manner in their response in opposition to summary judgment," which was filed in March 2010, some eight months before the court's summary judgment ruling against them. Appellants' Br. at 45.

Clearly, plaintiffs' brief in opposition to summary judgment is not part of the pleadings. And the fact that they were aware of and relied on their "newly discovered evidence" as early as March 2010 without seeking leave to amend before November 2010 confirms that the evidence was hardly newly discovered when they finally moved for leave to amend only after receiving the court's adverse judgment. In short, plaintiffs have fallen far short of establishing that the district court abused its discretion when it denied them leave to amend. *See Leisure Caviar*, 616 F.3d at 616 (stating that a court acts within its discretion when it denies a post-judgment motion to amend on account of "undue delay," including delay resulting from a failure to incorporate previously available evidence). Without the benefit of the allegations included in the proposed first amended complaint, plaintiffs lack grounds necessary to successfully challenge the district court's refusal to reconsider its rejection of the § 2(b)(1) exception to the time-bar. We thus find no error in the court's denial of plaintiffs' motion for reconsideration and no error in the court's failure to explain its assessment of plaintiffs' "critical evidence."[5]

---

[5]Although the district court did not expressly assess the merits of this "critical evidence," it did consider the evidence, as well as additional supplemental evidence submitted by plaintiffs in March 2011. R. 247 Memorandum Opinion at 3, 6-7 n.1, Page ID # 2546, 2549-50. (The supplemental evidence consisted primarily of a new Lycoming Service Instruction, No. 1508C, issued on February 10, 2011, expanding the warning concerning improper installation of magnetos to include all Lycoming engines. R. 233-3, Page ID # 2502.) The court simply concluded that the additional evidence did not amount to a "compelling explanation" for plaintiffs' failure to seek amendment earlier in the game.

Moreover, the evidence is not as "critical" as plaintiffs would have us believe. The evidence plaintiffs relied on in their opposition to AVCO's motion for summary judgment is a letter between a third party, Teledyne Continental Motors, Inc., and the FAA, dated July 2, 2009. R.189-5, page ID # 1694. Teledyne is the manufacturer of the rebuilt magneto that was installed in plaintiffs' airplane engine by Jewell Aircraft.[6] The letter advises the FAA of findings made by Teledyne after investigating plaintiffs' plane crash, reflecting Teledyne's impressions that the flange failure was due to stress resultant from use of (1) a gasket different than the Lycoming (AVCO) specified gasket, and (2) "older, superseded" hold down clamps. The letter further advises that "specified components, when installed correctly, result in minimal assembly stresses." *Id.* The letter acknowledges that Lycoming (AVCO) had partially addressed this condition by issuing Service Instructions in 2002, 2003 and 2007, emphasizing the importance of following service specifications in attaching Teledyne magnetos to certain Lycoming "300 series" engines installed in certain Mooney and Cessna Cardinal aircraft. *Id. See* R. 228-3 thru 228-5, Service Instructions Nos. 1508, 1508A and 1508B, Page ID # 2461-66. Plaintiffs' Piper Lance II airplane was equipped with a Lycoming "500 series" engine. Based on the results of its investigation, Teledyne recommended that "Lycoming Service Instruction 1508B be upgraded to a Mandatory Service Bulletin and be expanded to include *all* Lycoming Engines with TCM Dual magnetos installed." R. 189-5, Page ID # 1695 (emphasis added).

Plaintiffs contend that Teledyne's letter, viewed in conjunction with the "incomplete" Service Instructions issued prior to the 2006 accident, represents evidence from which the inference could plausibly be drawn that AVCO: (1) knew the risks associated with improper installation of magnetos in 300 series engines were no less present in 500 series engines; (2) negligently failed to issue required Service Instructions

---

[6]Teledyne is not a disinterested third party. *See* note 2, *supra*.

for 500 series engines (like the one in plaintiffs' Piper Lance II aircraft); and (3) knowingly withheld this information from the FAA.[7]

The significance of the facts presented is equivocal at best. Ascribing to AVCO, as of some time prior to 2006, knowledge of information communicated by Teledyne in 2009, is highly speculative. Moreover, plaintiffs' response in opposition to AVCO's motion for summary judgment also includes copies of Special Airworthiness Information Bulletins issued by the FAA in June and July 2008. R. 189-6, Page ID # 1698-1702. The contents of these bulletins are consistent with the Service Instructions referred to above. The Airworthiness Bulletins suggest that AVCO did not withhold relevant information regarding problems with magneto installation that had been experienced with some aircraft engines. The Airworthiness Bulletins also suggest reason to believe the problems that had been experienced were limited to certain engine models and certain situations. In other words, these exhibits, attached to plaintiffs' own brief, suggest that AVCO did not withhold required information, but reported it as it became available.

In sum, the critical evidence is not so incriminating as to suggest the denial of leave to amend and denial of reconsideration were an abuse of discretion or resulted in manifest injustice.

### III. CONCLUSION

Accordingly, we deny plaintiffs' claims of error. The district court's judgment is **AFFIRMED**.

---

[7]This information regarding the incompleteness of the prior Service Instructions is the "omission" from the overhaul manual revisions that plaintiffs would have the court treat as an "alteration or deletion" and therefore a "replacement part" for purposes of restarting the period of repose under GARA § 2(a)(2). *See supra*, pp. 11-16. Such Service Instructions are incorporated by reference into, and deemed to be part of, the overhaul manual. *See* R. 211-9 Overhaul Manual at p. i, Page ID # 1996. However, as indicated above, an omission from the overhaul manual, or a failure to issue a Service Instruction, or an incompleteness in a Service Instruction—i.e., something that does not exist—can hardly be deemed to be a "replacement or addition" under § 2(a)(2). Nor does such an omission or incompleteness represent particularly strong evidence that AVCO knowingly withheld required information for purposes of § 2(b)(1).