IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-701

Filed 19 March 2025

Nash County, No. 15CVS1134

JAN WEISS, Administrator CTA of the Estate of Dennis Alan O'Neal, and JAN
WEISS, Administrator CTA of the Estate of Debra Dee O'Neal, Plaintiffs,

v.

CONTINENTAL AEROSPACE TECHNOLOGIES, INC. (f/k/a CONTINENTAL
MOTORS, INC.); and AIRCRAFT ACCESSORIES OF OKLAHOMA, INC.,
Defendants.

Appeal by Plaintiffs from Order entered 7 June 2023 by Judge James L. Gale

in Nash County Superior Court. Heard in the Court of Appeals 6 November 2024.

*Poyner Spruill LLP, by N. Cosmo Zinkow and Andrew H. Erteschik, for
Plaintiffs-Appellants.*

*Williams Mullen, by Alexander M. Gormley, and Cunningham Swaim, LLP, by
Ross Cunningham and Steven D. Sanfelippo, appearing Pro Hac Vice, for
Defendant-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Jan Weiss as Administrator of the Estate of Dennis Alan O'Neal and the Estate

of Debra Dee O'Neal (collectively, Plaintiffs) appeals from the trial court's Order

granting Summary Judgment to Continental Aerospace Technologies, Inc.

(Continental), based on the statute of repose N.C. Gen. Stat. § 1-50(6).[1] The Record on Appeal tends to reflect the following:

On 31 March 2013, Dennis and Debra O'Neal were flying in their Lancair LC42-550FG airplane (the Aircraft), traveling from Wilkes County Airport in North Wilkesboro to Warren Field Airport in Washington, North Carolina. The O'Neals were licensed and experienced pilots; Debra piloted the Aircraft. After climbing to 5,000 feet, at 12:46 p.m. "the pilot declared an emergency and reported: 'low fuel pressure—engine's quitting.' " The pilot reported smoke in the cockpit and that the engine was barely producing power. At 12:50 p.m. the Aircraft made a forced landing and collided with trees and terrain. The O'Neals died as a result of the crash.

Data from the accident revealed the engine failure was caused by a faulty engine starter adapter: the adapter's oil plug became dislodged during flight, releasing engine oil. The Aircraft's engine starter adapter had been replaced approximately seven weeks before the crash, on 11 February 2013.

On 13 March 2015, the executor of the O'Neals' estates filed suit, asserting claims against several defendants. While the Complaint addresses additional related entities, it asserts claims against three separate defendants: Continental, the manufacturer of the engine and remaining defendant on appeal; Aircraft Accessories of Oklahoma (Aircraft Accessories), which overhauled the replacement engine starter

---

[1] Fred Cohen was originally named as the Executor of both Estates. On 14 August 2023, Jan Weiss was substituted as Administrator of the Estates by Order of the trial court.

adapter and sold it prior to installation; and Air Care Aviation Services (Air Care), the maintenance company that installed the starter adapter. The Complaint asserted claims for product liability, negligence, breach of warranty, and negligent representation, among others.

Evidence in the Record reveals the history of the Aircraft's engine and the faulty starter adapter. Continental originally manufactured the engine on 29 March 2002 and sold it to Lancair International, the manufacturer of the Aircraft. Lancair installed the engine in the Aircraft, which the O'Neals acquired in 2010. In January 2013, they noticed a problem with their engine starter adapter and brought it to Air Care for maintenance. On 11 February 2013, Air Care replaced the engine starter adapter with an overhauled adapter it had purchased from Aircraft Accessories on 29 January 2013. Aircraft Accessories performed an overhaul on this adapter in January 2013, using a 2011 maintenance and overhaul manual published by Continental (the Maintenance and Overhaul Manual). The resulting engine failure and crash occurred the month after the overhauled adapter was installed, on 31 March 2013.

The Complaint was filed in March 2015, and Aircraft Accessories moved to dismiss for lack of personal jurisdiction. The trial court denied this motion, and this Court affirmed that denial in a previous decision. *Cohen v. Continental Motors, Inc.*, 253 N.C. App. 407, 799 S.E.2d 72, 2017 WL 1632643 (unpublished). Continental likewise moved to dismiss for lack of personal jurisdiction, and we reversed the trial court's grant of that motion. *Cohen v. Continental Motors, Inc.*, 279 N.C. App. 123,

864 S.E.2d 816 (2021).

On 15 September 2022, Continental moved for Summary Judgment, arguing that all of Plaintiffs' claims were barred by the applicable statute of repose. The trial court granted this motion on 2 June 2023. On 30 June 2023, Plaintiffs filed written Notice of Appeal. We dismissed that appeal without prejudice as interlocutory, as Plaintiffs' claims against all defendants had not been resolved. *Cohen v. Continental Aerospace Technologies, Inc.,* 294 N.C. App. 315, 901 S.E.2d 271, 2024 WL 2828596 (unpublished). Plaintiffs had at that time voluntarily dismissed their claims against Air Care and Teledyne Technologies (an associate corporation of Continental's) but their claims against Aircraft Accessories remained. On 11 June 2024, Plaintiffs voluntarily dismissed their claims against Aircraft Accessories. With Judgment now final with respect to all defendants, on 10 July 2024, Plaintiffs timely refiled their Notice of Appeal from the 2 June 2023 Order granting Summary Judgment to Continental. *See* N.C. Gen. Stat. § 1A-1, Rule 54 (2023); N.C. Gen. Stat. § 7A-27(b)(1); N.C.R. App. P. 3 (2024).

**<u>Issues</u>**

The dispositive issues in this case are whether: (I) the Maintenance and Overhaul Manual used in overhauling the engine starter adapter can be considered a separate product that supports an independent claim for product liability arising within the statute of repose provided by now-repealed N.C. Gen. Stat. § 1-50(a)(6); and (II) Plaintiffs properly pleaded a claim for product liability arising from the

allegedly defective Maintenance and Overhaul Manual in their Complaint.

## Analysis

The trial court granted Continental's Motion for Summary Judgment, holding Plaintiffs' claims were barred by the six-year statute of repose applicable to the Aircraft under then-N.C. Gen. Stat. § 1-50(a)(6) (2007).

Summary judgment based on a statute of repose is appropriate when "the pleadings or proof show without contradiction that the statute of repose has expired." *Bryant v. Don Galloway Homes, Inc.,* 147 N.C. App. 655, 657, 556 S.E.2d 597, 600 (2001). This is a question of law that we review *de novo* when the relevant facts are not in dispute. *Udzinski v. Lovin*, 159 N.C. App. 272, 273, 583 S.E.2d 648, 649 (2003).

Under Section 1-50(a)(6), "No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." Section 1-50(a)(6) was repealed in 2009 and replaced with N.C. Gen. Stat. § 1-46.1, extending the time to file a claim to twelve years for causes of action accruing on or after 1 October 2009. S.L. 2009-420, § 1, 2009 N.C. Sess. Laws 808. Under both the current and repealed statute, the repose period begins to run on "the date of initial purchase for use or consumption." N.C. Gen. Stat. §§ 1-46.1(1); 1-50(a)(6). For products first delivered or purchased before 1 October 2009, the six-year statute of repose applies. *See, e.g., Robinson v. Bridgestone/Firestone N. Am. Tire, LLC,* 209 N.C. App. 310, 315, 703 S.E.2d 883,

886-87 (2011). *See also Colony Hill Condominium I Ass'n v. Colony Co.,* 70 N.C. App. 390, 394, 320 S.E.2d 273, 276 (recognizing that a statute of repose grants the defendant a vested right not to be sued which cannot be impaired by the retroactive effect of a later statute).

Continental contends because it sold the Aircraft engine in 2002, the statute of repose expired prior to the filing of the Complaint in 2015. Thus, Continental contends Plaintiff's claims against it alleged in the Complaint are barred by the expiration of the six-year statute of repose.

On appeal, Plaintiffs argue the trial court erred in concluding their claims were barred by Section 1-50(a)(6) because they contend their product liability claim is based—in part—on a defect in the 2011 Maintenance and Overhaul Manual published by Continental and used in the overhaul of the engine starter adapter, rather than the Aircraft engine itself. Plaintiffs claim the Maintenance and Overhaul Manual erroneously instructed maintenance personnel to coat the threads of the oil plug in aviation oil in addition to a sealing agent prior to installing it, which proximately caused the plug to come loose. Thus, Plaintiffs contend under this theory of the case, the defective product was not the engine, but rather the Maintenance and Overhaul Manual. Therefore, Plaintiffs assert the applicable date for purposes of the statute of repose is the date of sale of the 2011 Maintenance and Overhaul Manual.

I.    Maintenance and Overhaul Manual as Separate Product

Plaintiffs argue our decision in *Driver v. Burlington Aviation* requires their

claims be allowed to proceed. 110 N.C. App. 519, 430 S.E.2d 476 (1993). In *Driver,* the plaintiff was injured when riding as a passenger in an aircraft that lost power and crashed. *Id.* at 521, 430 S.E.2d at 479. The complaint alleged the aircraft's flight information manual, which had been relied upon by the pilot, contained insufficient information concerning carburetor icing: it failed to warn about weather conditions that could cause icing and failed to advise pilots to activate carburetor heat during slow-flight operations to prevent this. *Id.* at 522, 430 S.E.2d at 479. It alleged this omission from the flight manual proximately led to the crash. *Id.* at 523, 430 S.E.2d at 479.

The aircraft manufacturer argued the action was based in product liability and, since the aircraft was sold in 1978, eleven years before the crash, the claim was barred by the statute of repose N. C. Gen. Stat. § 1-50(6). However, the plaintiff did not allege the aircraft itself was defective in any way and conceded that carburetor icing is a common condition that occurs in any aircraft under certain conditions. 110 N.C. App. at 528-29, 430 S.E.2d at 483. Accordingly, we held the defective product at issue was the manual, not the aircraft. *Id.* As the manual was sold to the pilot separately, the date of that sale was "the crucial event triggering the statute of repose." *Id.* Because neither party had pleaded that date, the trial court had insufficient information to dismiss the action. *Id.*

Plaintiffs argue this case is analogous to *Driver* in that the alleged defect lies only in the Maintenance and Overhaul Manual, a separate product from the Aircraft,

and the statute of repose should run from its date of sale rather than that of the Aircraft. Continental argues *Driver* is distinguishable because it involves a flight manual, as opposed to the Maintenance and Overhaul Manual in this case. It argues even if a flight manual can support a separate product liability claim, the Maintenance and Overhaul manual is issued by Continental in its role as a manufacturer of the Aircraft components. Thus, Continental contends a maintenance manual cannot be considered a separate product establishing an independent product liability claim.

### A. *Manuals as Aircraft Components under GARA*

In support of its argument, Continental raises as persuasive authority several federal cases interpreting provisions of the General Aviation Revitalization Act (GARA). This federal statute creates an 18-year statute of repose for civil actions against manufacturers of general aviation aircraft and component parts. GARA, § 2(a)(2); 49 U.S.C. § 40101 Note.

This 18-year period contains a "rolling" provision, which causes the 18-year period to begin anew if a plaintiff's injury is caused by any "new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft." *Id.* While federal courts have held flight manuals are "parts" of the aircraft for the purposes of that statute, they have distinguished maintenance manuals from that consideration. Continental argues we should likewise distinguish between these types of manuals.

However, the distinction made by federal courts is inapposite to this case.

Federal courts have held that a flight manual is so intrinsic to the aircraft as to be a "part" of it under GARA, and a reissue of the manual can trigger the statute's rolling provision. In *Caldwell v. Enstrom Helicopter Corp.*, the plaintiff alleged a helicopter's flight manual was defective because it did not include a warning that the last two gallons of fuel in the helicopter's tanks could not be used, leading to a crash when the aircraft ran out of fuel. 230 F.3d 1155 (9th Cir. 2000) Although the helicopter had been purchased 23 years before the crash in that case, the flight manual had been revised several times within the previous 18 years. *Id.* at 1156.

That court held a flight manual is a "part" of the aircraft:

> Federal regulations require that manufacturers of helicopters include a flight manual with each helicopter and require that the manual contain "information that is necessary for safe operation because of design, operating, or handling characteristics." 14 C.F.R. § 27.1581(a)(2). The manual specifically must include information about a gas tank's unusable fuel supply, if the unusable portion exceeds one gallon or five percent of the tank capacity. *See id.* § 27.1585(e). In the face of these requirements, there is no room to assert that a helicopter manufacturer's manual is a separate product. By the rule of the excluded middle, then, it must be part of the aircraft.
>
> In other words, a flight manual is an integral part of the general aviation aircraft product that a manufacturer sells. It is not a separate, general instructional guide (like a book on how to ski), but instead is detailed and particular to the aircraft to which it pertains. The manual is the "part" of the aircraft that contains the instructions that are necessary to operate the aircraft and is not separate from it.

*Id.* at 1157. Accordingly, if the manufacturer had, within the past 18 years, made a substantive revision or deletion to the instructions regarding fuel tanks and that revision proximately caused the crash, the plaintiffs' claim would not be barred by GARA. *Id.*

The Ninth Circuit distinguished this from prior cases in which plaintiffs alleged defective manuals to assert claims that manufacturers had failed to warn of latent defects in the aircraft itself. *See, e.g., Alter v. Bell Helicopter Textron, Inc.*, 944 F.Supp. 531, 538-39 (S.D. Tex. 1996) (holding GARA barred claim that maintenance manual failed to provide inspection instructions that would have allowed detection that defective component was failing); *Schamel v. Textron-Lycoming*, 1 F.3d 655, 657 (7th Cir.1993) (holding action for failure to warn of a defective component barred by Indiana statute of repose). Unlike these cases, the claim in *Caldwell* was not an attempt to circumvent the statute of repose by implying an ongoing duty to warn of a design or manufacturing defect in the aircraft. Instead, the defect was entirely within the revised flight manual, which failed to properly instruct how to operate the aircraft. *Caldwell*, 230 F.3d at 1157; *see also Crouch v. Honeywell Int'l, Inc.* 720 F.3d 333, 342 (6th Cir. 2013) ("If claims for negligently *failing* to warn in manual revisions were not barred by GARA's period of repose, plaintiffs could artfully plead suits arising out of design defects as 'failure to warn' claims, thereby defeating Congress's intent." (emphasis in original)).

In applying this precedent, federal courts have distinguished between flight

and maintenance manuals. In *Colgan Air, Inc. v. Raytheon Aircraft Co.,* the Fourth Circuit rejected the district court's holding that a maintenance manual was, as a matter of law, a "part" of an aircraft for the purpose of interpreting a warranty provision. 507 F.3d 270, 280 (2007). The plaintiff alleged it relied upon the maintenance manual and improperly installed a component in the aircraft, causing the aircraft to crash, and asserted a claim for breach of warranty. *Id.* at 274. The express warranty agreement disclaimed all other warranties and warranted "each part of the Aircraft" was free from defects in workmanship, materials, or design for a period of ninety days. *Id.* at 273. The defendant argued the manual was a part of the aircraft, citing *Caldwell,* and as the crash had occurred outside the 90-day window no express or implied warranty applied.

The court rejected this argument. Unlike a flight manual, a maintenance manual is not required to be kept onboard the aircraft and is not "necessary to operate the aircraft" in the way a flight manual is. *Id.* at 276-77.[2] Accordingly, whether the maintenance manual was a part of the aircraft subject to the warranty provision was a question of fact, and evidence as to how the plaintiff obtained the manual—whether it came with the aircraft or was purchased separately and paid for with a subscription—was relevant to resolving this question. *Id.* at 277-78.

The Sixth Circuit's approach to overhaul manuals like the Maintenance and

---

[2] *But see Rogers v. Bell Helicopter Textron,* 185 Cal. App. 4th 1403, 1410, 112 Cal. Rptr. 3d 1, 2 (2010) (disagreeing that federal regulations require flight manuals to be carried onboard aircraft).

Overhaul Manual at issue in this case mirrors this treatment of maintenance manuals. In *Crouch,* the plaintiffs alleged an engine failure occurred due to a separation of components installed during an overhaul performed according to instructions in a manual published by the manufacturer. 720 F.3d at 336-37. They argued the overhaul manual was a part of the aircraft, and revisions to the manual triggered GARA's rolling provision for replacement parts. *Id.* at 341. The court rejected this argument, as the overhaul manual, unlike a flight manual, was not "originally in, or . . . added to, the aircraft." *Id.* at 342. Thus, federal courts consider maintenance and overhaul manuals as less integrated into the aircraft than flight manuals.

### B. *Flight, Maintenance, and Overhaul Manuals under* Driver

Continental essentially argues that, because federal courts treat flight and overhaul manuals differently from each other when determining if they are "parts" under GARA, we should also treat them differently when determining if the manual can be considered a separate product for the purpose of our statute of repose. This argument ignores the reasoning underlying the distinction made by federal courts: that a maintenance or overhaul manual is not by law considered a "part" by federal courts because it is *less* integrated into the aircraft than a flight manual. Our decision in *Driver* held that a flight manual is a separate product. Applying the reasoning of the federal cases Continental cites, the Maintenance and Overhaul Manual in this case is at least as much a separate product from the Aircraft as a flight manual, if

not more so.

We first note, as federal courts have acknowledged, our holding in *Driver* is at odds with these federal cases: "The reasoning of the state court of appeals in *Driver* is inconsistent with that of the other courts faced with similar claims." *Alter*, 944 F. Supp. at 540. "The sole case holding that an airplane manual is a separate product from its corresponding aircraft is *Driver v. Burlington Aviation, Inc.*" *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 404 F.Supp.2d 893 (E.D. Va. 2005) (*rev'd* 507 F.3d 270). While federal caselaw regards a flight manual as a part of the aircraft as a matter of law, for the purpose of North Carolina's statute of repose a flight manual is a separate product that can support a product liability claim as long as (1) the defect exists only in the manual and (2) the manual was obtained in a separate transaction from the purchase of the aircraft. *Driver*, 110 N.C. App. at 528-29, 430 S.E.2d at 483. We are bound by this interpretation made in a prior decision of another panel of this Court. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

Accordingly, the persuasiveness of these federal cases to support Continental's argument is mitigated. Moreover, the cases cited by Continental distinguish between (1) flight manuals and (2) maintenance or overhaul manuals based on a determination the latter are *less* integrated into the aircraft itself. In *Colgan,* the court held the maintenance manual was not as a matter of law a part of the aircraft and explicitly rejected the trial court's conclusion that the manual and the aircraft were a "single, integrated product" as, unlike a flight manual, the maintenance

manual was not necessary to operate the aircraft. 507 F.3d at 276-77. Similarly, in *Crouch* the Sixth Circuit concluded that, unlike a flight manual, an overhaul manual "is not a replacement part of the aircraft." 720 F.3d at 342. These cases do not persuade us that we should consider a maintenance manual more integrated into the aircraft than a flight manual and thus unable to support a claim like the one made in *Driver*.

Continental contends some of the specific language used in *Crouch* implies an inverted analysis of this distinction, arguing the Sixth Circuit "recognized that the overhaul manual was not a separate product because 'production of the manual is an essential element in the overall process of creating a product that satisfies FAA regulations.'" *Id.* at 339. Continental misunderstands the reasoning of that court, which at no point in its opinion determines the overhaul manual is not a "separate product." Continental's analysis of *Crouch* conflates two separate issues dealt with in the opinion. The first is a threshold issue: GARA's 18-year statute of repose only applies to suits brought against an aircraft manufacturer for actions performed "in its capacity as a manufacturer." 49 U.S.C. § 40101 Notes, § 2. The court determined the defendant was acting in its capacity as a manufacturer in publishing the manual, in part because it had a duty to disclose maintenance information to the FAA, before moving on to the second issue: determining whether the manual should be considered a part of the aircraft. 720 F.3d at 340-41.

While the Sixth Circuit recognized in its analysis of this second question "the

duty of a manufacturer to publish and update manuals derives from its manufacturing of the original aircraft or part," *id.* at 342, it does not follow that the overhaul manual is therefore more tightly integrated into the aircraft than a flight manual. The court in *Crouch* unequivocally held "the revised overhaul manual relied on by Jewell Aircraft is not a replacement part of the aircraft." *Id.* Under the federal caselaw cited by Continental, if a manual is not a part, it is a separate product. *Caldwell*, 230 F.3d at 1157 ("As a matter of logic, there are only two possibilities. Either an aircraft's flight manual is a part of the aircraft, or it is a separate product."). Under *Driver,* we treat flight manuals as a separate product for the purpose of the statute of repose if the manual was obtained separately from the aircraft and the claims stem from defects in the manual. Continental has presented no reason we should not apply that same analysis to overhaul manuals.

Accordingly, Plaintiffs can make a product liability claim based on defects in the Maintenance and Overhaul Manual as long as: (1) the manual was purchased separately from the Aircraft and within the applicable statute of repose; (2) their claim is based entirely upon defects in the manual and not design or manufacturing defects in the Aircraft or its components; and (3) the defects in the manual proximately caused harm to Plaintiffs. *See Driver*, 110 N.C. App. at 528-29, 430 S.E.2d at 483.

Continental argues, however, Plaintiffs failed to properly plead their claim that the Maintenance and Overhaul Manual was itself a defective product—separate

from the Aircraft and its engine—and proximately caused the crash.

Under our Rules of Civil Procedure:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim, or third-party claim shall contain
>
> (1) A short and plain statement of the claim sufficient to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, and
>
> (2) A demand for judgment for the relief to which he deems himself entitled.

N.C. Gen. Stat. § 1A-1, Rule 8(a) (2023). Under this notice theory of pleading, "a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought. *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970) (citations omitted). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Pyco Supply Co., Inc. v. Am. Centennial Ins. Co.,* 321 N.C. 435, 442-43, 364 S.E.2d 380, 384 (1988).

"While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a legally recognized

claim[.]" *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 205, 367 S.E.2d 609, 612 (1988). It should "give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial." *Murdock v. Chatham County,* 198 N.C. App. 309, 317, 679 S.E.2d 850, 855 (2009).

Plaintiffs argue Continental had sufficient notice of their theory the defective Maintenance and Overhaul Manual proximately caused the engine failure. In their Complaint, they allege Continental "fail[ed] to properly provide maintenance instructions for the starter adapter" and that it provided "defective and inadequate instructions, warnings and information regarding the operation and maintenance of the aircraft engine and its systems, components, accessories, and hardware."

Outside of these two allegations, the Complaint primarily asserts liability based on defective components, including alleging engine components were defectively designed. It alleges the defendants failed to properly design and manufacture the Aircraft engine and various components and that the engine and starter adapter were not constructed to function safely.

The Complaint in this case differs significantly from that in *Driver*, in which there were "no allegations in plaintiffs' amended complaint contending the aircraft was in any way defective." 110 N.C. App. at 528-29, 430 S.E.2d at 483. The plaintiffs in that case conceded the carburetor icing that led to the crash was a common condition that could occur in any aircraft, and did not argue the aircraft functioned defectively or improperly. *Id.* at 529, 430 S.E.2d at 483. Instead, their entire claim as

pleaded addressed the failure of the flight information manual to properly instruct a pilot regarding this issue. Accordingly, we held "the 'defective' product at issue is the manual, not the aircraft." *Id.*

In this case, there is no separate mention of the Maintenance and Overhaul Manual in the Complaint. It is not alleged to be a separately defective product. As such, unlike in *Driver*, there is no claim that the Maintenance and Overhaul manual was defective. The allegations Continental "fail[ed] to properly provide maintenance instructions for the starter adapter" and provided "defective and inadequate instructions, warnings and information regarding the operation and maintenance of the aircraft engine and its systems, components, accessories, and hardware" give no notice of the factual theory that a maintenance worker improperly performed the overhaul based on faulty instructions from a defective Maintenance and Overhaul Manual. Instead, the Complaint alleges defects in the design and manufacture of components of the Aircraft engine. The Complaint did not give Continental notice that it was required to defend a product liability claim asserting the Maintenance and Overhaul Manual as an independent defective product, separate from the Aircraft and its engine.

Thus, the Complaint did not state a claim for liability based on a defective manual as a product separate from the Aircraft. Therefore, the six-year statute of repose provided by now-repealed N.C. Gen. Stat. § 1-50(a)(6) was properly calculated from the date of the initial purchase of the Aircraft's engine in 2002. Consequently,

the trial court did not err in granting Summary Judgment to Continental based on the applicable statute of repose.

## **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, we affirm the trial court's 3 June 2023 Order granting Summary Judgment in favor of Continental.

AFFIRMED.

Judges ARROWOOD and COLLINS concur.