OSCN Found Document:SCHIEWE v. CESSNA AIRCRAFT CO

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 SCHIEWE v. CESSNA AIRCRAFT CO
2024 OK 19
Case Number: 121,203
Decided: 03/12/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 19, __ P.3d __

 

 

Jade P. Schiewe and Zachary Pfaff, Plaintiffs/Appellants,
v.
Cessna Aircraft Company, Defendant/Appellee, Spartan Aviation Industries, Inc., Kelly Aerospace Turbine Rotables, Inc., and Eaton Corporation, Defendants.

ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
HONORABLE DAMAN H. CANTRELL, DISTRICT JUDGE

¶0 This case arises out of an airplane crash that occurred in September 2010. Plaintiffs, Jade P. Schiewe and Zachary Pfaff (Pilots) filed suit in Tulsa County District Court against Defendant, Cessna Aircraft Company, for negligently failing to revise its service manual. Cessna filed a motion for summary judgment asserting that Pilots' claims were barred by the General Aviation Revitalization Act of 1994 (GARA). After years of litigation, the Tulsa County District Court granted summary judgment in favor of Cessna. We retained Pilots' appeal to determine whether GARA's 18-year statute of repose applies.

AFFIRMED.

Tadd Bogan, Patrick G. Colvin, and C. Michael Copeland, Jones, Gotcher & Bogan, P.C., Tulsa, Oklahoma, for Appellants Jade P. Schiewe and Zachary Pfaff.

James K. Secrest, II, James Secrest, III, and Edward J. Main, Secrest, Hill, Butler & Secrest, Tulsa, Oklahoma, and Michael G. Jones, Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., Wichita, Kansas, for Appellee Cessna Aircraft Company, subsequently merged into Textron Aviation Inc.

OPINION

DARBY, J., 

¶1 In August 2011, Plaintiffs, Jade P. Schiewe and Zachary Pfaff (Pilots), filed a negligence lawsuit against Cessna Aircraft in Tulsa County District Court. The lawsuit was based on an airplane crash that occurred on September 28, 2010, when Pilots were flying a Cessna 172RG, in Tulsa, Oklahoma. Pilots' claim is based on Cessna's alleged negligent failure to revise the service manual for the Cessna 172RG to include a new part and installation instructions for said part. The underlying question before this Court is whether a claim for negligent failure to revise a service manual is subject to the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, Aug. 17, 1994, 108 Stat. 1552, 49 U.S.C. 40101 note. We answer in the affirmative.

I. STANDARD OF REVIEW

¶2 Summary judgment settles only questions of law, therefore it is reviewed de novo. Fraternal Order of Police v. City of Norman, 2021 OK 20, ¶ 2, 489 P.3d 20, 22. Statutory interpretation is also a question of law subject to de novo review. Thurston v. State Farm Mut. Auto. Ins. Co., 2020 OK 105, ¶ 2, 478 P.3d 415, 417. We will affirm summary judgment only if we determine from the pleadings and evidence before it, that there is no genuine dispute as to any material fact and one of the parties is entitled to judgment as a matter of law. Fraternal Order of Police, 2021 OK 20, ¶ 2, 489 P.3d, at 22; see also 12 O.S.2011, § 2056(C).

II. BACKGROUND & PROCEDURAL HISTORY

¶3 On September 28, 2010, Pilots were flying Cessna 172RG, Serial Number 172RG0258, Registration Number N5145U (the Aircraft), in Tulsa, Oklahoma. When Schiewe lowered the plane's landing gear in preparation for landing, flames erupted from under the instrument panel. The fire was allegedly caused by the terminal lug on the plane's hydraulic pump power pack for the landing gear shorting and arcing onto the case of the power pack. The fire quickly spread to the floor of the aircraft and filled the cabin with smoke, causing Pilots to crash land in a nearby field.

¶4 The Federal Aviation Administration approved the Type Certificate for Cessna Aircraft Model 172RG on June 1, 1979. Cessna manufactured the Aircraft in January 1980. On February 1, 1980, Cessna sold the Aircraft to its first purchaser. The Aircraft was certified as airworthy on February 6, 1980.

¶5 Cessna later fabricated a "cap" that fit over the terminal lug of the hydraulic pump power pack. Pilots alleged the part was designed to prevent accidents like the one in this case. Cessna's corporate representative testified that prior to this accident, Cessna primarily thought of the cap as a way to keep debris out of the connection. The 1980 thru 1984 Cessna parts catalog, dated June 30, 1983, listed the cap as "cover" and showed it in the parts diagram. The cap is also shown in the Model 172RG Series Parts Catalog (1980 Thru 1985), dated March 18, 1985. But Cessna never revised the service manual to provide instructions or visuals for installation of the cap.

¶6 Cessna has not overhauled, serviced, or otherwise provided maintenance work for the hydraulic power pack on the Aircraft subsequent to delivery to its first purchaser. Further, Cessna has not supplied any new component, system, subassembly, or other part for the hydraulic power pack on the Aircraft subsequent to delivery to its first purchaser.

¶7 In August 2011, Pilots filed a petition against Cessna Aircraft in Tulsa County District Court. Pilots' claim is based upon Cessna's alleged negligent failure to revise its service manual to include a specific instruction for the installation and proper positioning of a cap on the terminal of the Hydraulic Power Pack for Model 172RG Aircraft. On October 18, 2012, Cessna filed a motion for summary judgment, claiming that Pilots' claims against Cessna were prohibited by the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, Aug. 17, 1994, 108 Stat. 1552, 49 U.S.C. 40101 note. Cessna argued that GARA's 18-year statute of repose barred Pilots' claims against Cessna because the Aircraft was manufactured in January 1980, Cessna sold it on February 1, 1980, it was certified as airworthy on February 6, 1980, and Cessna had not serviced or provided any maintenance for the Aircraft subsequent to the delivery of the Aircraft on February 1, 1980--all more than thirty years prior to the accident.

¶8 For the next ten and a half years, the parties continued to argue the question of summary judgment based on GARA; the trial court held an evidentiary hearing to answer material issues of fact regarding dates, and Cessna and Pilots took depositions from relevant parties.[1] Through that process, it was revealed that the procedures and illustrations for the removal and installation of a Hydraulic Power Pack remained unchanged in the Service Manual through at least September 28, 2010, although there were various other unrelated edits to the Service Manual. The mechanic who installed the current power pack assembly testified that he knew that the Cessna Parts Catalog showed a cover for the post on the side of the power pack, but he did not install a cover because the cover was not mentioned in the Service Manual. After nine-and-a-half years, on November 10, 2022, Cessna filed a motion to reconsider the GARA issues again, citing to this Court's recent rule changes allowing citation to unpublished Court of Civil Appeals' opinions and asserting the relevancy of the recent unpublished Court of Civil Appeals' opinion, Lunn v. Continental Motors, Inc.(Lunn II), No. 119,394 (COCA Div. III Mar. 4, 2022)(unpublished), cert. denied (Okla. Sup. Ct. Dec. 19, 2022). After renewed briefing on the issues, on March 8, 2023, the district court granted summary judgment in favor of Cessna based on GARA's statute of repose.

¶9 At the outset, the district court noted this Court's rule change allowing district courts to consider unpublished COCA opinions as persuasive authority. The district court found that the parties agreed that the maintenance manual is not a part and therefore ruled that revision to the manual does not "re-start the GARA clock under GARA's 'rolling provision.'" But the court found that an item does not need to be a "part" for the GARA statute of repose to apply, rather that it applies to prohibit actions against manufacturers acting in capacity as manufacturer. The court reviewed Lunn I, Lunn v. Hawker Beechcraft Corp., 2018 OK CIV APP 12, 417 P.3d 1206 (decided Sept. 29, 2017; mandate issued Mar. 1, 2018)(Lunn I), and Lunn II, Lunn v. Continental Motors, Inc. (Lunn II), No. 119,394 (COCA Div. III Mar. 4, 2022)(unpublished), cert. denied (Okla. Sup. Ct. Dec. 19, 2022); the district court noted that Lunn II relied on the plain language of GARA and cited to GARA's language that "no civil action" can be maintained against the company "in its capacity as a manufacturer." The district court considered a federal case from Delaware wherein the court held that a manufacturer is acting in its capacity as manufacturer when it publishes maintenance manuals because federal regulations require the manufacturer to publish them. The district court ultimately held that GARA operates to bar the claims against Cessna based on maintenance manuals.

¶10 On appeal, Pilots assert that the district court erred in granting the motion for summary judgment, and by extending GARA protections to a claim for negligence with respect to a service manual. Pilots claim that the district court's ruling creates an anomaly in aircraft manufacturer liability, where a manufacturer would be liable for negligence in design or manufacture of a new part for a 20-year-old plane but would not be liable for negligent revision of the service manual with erroneous instructions for the same new part. In their motion to retain, Pilots claim that GARA only absolves manufacturers of liability arising from a part or an aircraft, which the parties agreed the maintenance manual is not. Pilots requested the Court retain the appeal to answer whether GARA's 18-year statute of repose for aircraft manufacturers applies to claims alleging the manufacturer's negligence in maintaining the maintenance or service manual. The Court granted Pilots' motion to retain.

III. ANALYSIS

¶11 The General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, Aug. 17, 1994, 108 Stat. 1552, 49 U.S.C. 40101 note,[2] is a federal statute of repose barring civil liability for manufacturers of aircrafts and aircraft parts starting eighteen years after the date of delivery to the first purchaser or first seller. GARA, § 2(a)(1)--(2). GARA states "the term 'limitation period' means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft." GARA, § 3(3).

¶12 In order to answer whether the statute of repose in GARA applies to the facts of this case, we must determine whether 1) a service manual is created in a manufacturer's capacity as manufacturer, 2) a service manual is included within the limitation period provided in GARA, and 3) issuing or failing to issue a new service manual re-starts the GARA tolling period.

A. Capacity as Manufacturer

¶13 Cessna argued, and the district court agreed, that the GARA provision in section 2(a) prohibits bringing certain civil actions for damages against the manufacturer of an aircraft in its capacity as a manufacturer. But Pilots argue that the service manual is not covered under GARA's protections for manufacturers in their capacity as a manufacturer. The legislative report explaining the intent behind GARA stated:

Section 2(a) sets forth the legislation's basic limitation on civil actions for damages brought against manufacturers of general aviation aircraft and their component parts. This limitation applies with respect to civil actions arising out of "accidents," and it is limited to civil actions brought against a manufacturer "in its capacity as a manufacturer." The latter limitation is intended to insure that parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity. For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such act was a proximate cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic. Similarly, if a manufacturer had built a plane that was in use for a period beyond the applicable statute of repose, and had also just built a new component part that was installed in the aircraft within the statute of repose period, in the event of an accident, the statute of repose would bar a suit against the manufacturer relating to the production of the plane, but not the component part.

H.R. REP. 103-525(II)(Section-by-Section Analysis) (June 24, 1994). This clarifies that the limitation in GARA's statute of repose, "in its capacity as a manufacturer," is intended to insure manufacturers are not immune from liability from discretionary roles they choose to adopt. But Cessna's creation and maintenance of the service manual is not a discretionary role that Cessna has chosen to also take on in another capacity, like being a mechanic or pilot. In fact, section 23.1529 of the Code of Federal Regulations mandates that Cessna had a duty to create and maintain the service manual. Section 23.1529 provides:

The applicant must prepare Instructions for Continued Airworthiness, in accordance with appendix A of this part, that are acceptable to the Administrator. The instructions may be incomplete at type certification if a program exists to ensure their completion prior to delivery of the first airplane or issuance of a standard certificate of airworthiness, whichever occurs later.

14 C.F.R. § 23.1529. The mechanic who worked on the aircraft testified that Cessna had a regulatory duty under federal law to maintain and revise maintenance manuals for its aircraft in its capacity as manufacturer. He explained that the 'applicant' subject to this regulation is the "type certificate holder" of the aircraft, in this case--Cessna. The appendix clarifies that the continued airworthiness instructions should be prepared as manuals, including maintenance or service manuals -- exactly what is at issue here.[3] Numerous federal regulations require manufacturers of aircraft to follow an extensive certification process which requires them to create instructions to assist in continuing maintenance of the aircraft. See 14 C.F.R. §§ 21.31, 21.50, 23.1529, 25.1529, 25.1729, 26.1, 26.33, 27.1529, 29.1529, 31.82, 33.4, 35.4, 43.10. Thus the district court is correct, the creation of a service manual for the Cessna 172RG is an action taken in Cessna's capacity as manufacturer of the Cessna 172RG. Our interpretation here is consistent with that of numerous state and federal courts. See Crouch v. Honeywell Int'l, Inc., 720 F.3d 333, 341 (6th Cir. 2013) (applying GARA and holding that manufacturer's duty to publish and update maintenance manuals is within its capacity as manufacturer); see also Estate of Grochowske v. Romey, 2012 WI App 41, ¶ 20, 340 Wis. 2d 611, 629, 813 N.W.2d 687, 697 (applying GARA and holding manufacturer fulfilling legal obligation to provide maintenance manual was acting in its capacity as manufacturer); see also Mason v. Schweizer Aircraft Corp., 653 N.W.2d 543, 550--52 (Iowa 2002) (applying GARA and holding manufacturer published maintenance manual in its capacity as a manufacturer, stating "[a]ny other interpretation would subject manufacturers to liability on failure-to-warn claims without regard to the statute of repose, thereby thwarting Congress's objective in enacting the statute."); see also Burroughs v. Precision Airmotive Corp., 78 Cal. App. 4th 681, 694--95, 93 Cal. Rptr. 2d 124, 134 (2000) (finding manufacturer acting in capacity in creating mandatory service bulletins and that GARA barred any related claims, including a continuing duty to warn). Because Cessna is required to create the service manual as a part of the aircraft being certified, the service manual is created by Cessna in its capacity as a manufacturer.

B. Coverage Under "Limitation Period"

¶14 Pilots further argue that GARA does not apply because a maintenance or service manual does not fall within the terms used to define what the limitation period applies to. Pilots note the definition of "limitation period" states it "means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft . . . ." GARA, § 3(3) (emphasis added). Pilots assert that because the service manual does not explicitly fit any of the limitation period descriptions--i.e., it is not an aircraft, it is not an aircraft component, it is not an aircraft system, it is not an aircraft subassembly, and it is not an aircraft part--it is not covered by the statute of repose. Pilots assert that Cessna negligently failed to update the service manual to include installation instructions or visuals of the new part when it was added to the parts manual, thus their claim is not barred by GARA.

¶15 The applicable limitation period for the aircraft in question originally began over 30 years before the accident in this case, on February 1, 1980. Any claims related to negligence or products liability of the design of the aircraft or its original parts were prohibited under GARA on February 1, 1998, 18 years after the delivery of the aircraft to its first purchaser. The aircraft manufacturer added the new part within a few years of the initial delivery and added the new part to the parts catalog on June 30, 1983. Any civil action specifically related to the new part was prohibited after June 30, 2001, at the latest.[4] Cessna did not add the new part to the service manual with incorrect installation instructions or diagrams which were the proximate cause of an accident. Rather, Cessna failed to ever add the new part to the service manual at all. Cessna's failure to edit the service manual to include the new part essentially erased the new part, leaving the service manual exactly the same as it was prior to the creation of the new part.

¶16 There is little case law specifically addressing whether a service manual is a part within the meaning of GARA. In Alter, the court concluded that "the suit for a failure of the manuals to correct a design flaw is precluded by the statute of repose that bars a suit for the design flaw." Alter v. Bell Helicopter Textron, Inc., 944 F. Supp. 531, 540 (S.D. Tex. 1996). In Robinson, plaintiffs sought to avoid the GARA statute of repose by alleging a recent maintenance manual failed to adequately address problems on an aircraft that was already over 18 years old. The court quoted:

To hold that [the defendant] should be liable because its manuals issued within the period of repose did not provide an adequate means of correcting the design flaw of the critical component, would be to circumvent the statute of repose by providing a back door to sue for the design flaw-ostensibly not for the design flaw itself; but for the failure of the manuals to adequately correct the flaw. The result would be the evisceration of the statute of repose.

Robinson v. Hartzell Propeller Inc., 326 F. SupP.2d 631, 661 (E.D. Pa. 2004); see also Burton v. Twin Commander Aircraft, LLC, 148 Wash. App. 606, 620, 221 P.3d 290, 297 (2009), rev'd, Burton v. Twin Commander Aircraft, LLC, 171 Wash. 2d 204, 254 P.3d 778 (2011).

¶17 Pilots' interpretation of GARA would create a continuing duty on the part of aircraft manufacturers to continually check and revise service manuals for older aircraft to ensure they did not fail to include information, long after the duty based on the aircraft or any new part was extinguished by the statute of repose. But Pilots are also correct that interpreting GARA such that the service manual is not a "part" would potentially allow manufacturer's to avoid liability if they were to add or remove information that was the proximate cause of an accident. While the maintenance manual itself is not an aircraft, the creation of the maintenance manual is required by the aircraft manufacturer as part of the application process in order to obtain a type certification for the aircraft, and must be completed at the latest prior to delivery of the first airplane or issuance of a standard certificate of airworthiness, whichever occurs later-- thus the service manual is created by Cessna in its capacity as aircraft manufacturer as a part or component of the aircraft. See 14 C.F.R. 23.1529.

¶18 Further, the service manual is contemplated within GARA as well, although it is not explicitly listed. In section 2(b), GARA provides specific exceptions where it does not apply, which include if "the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented[,] . . . concealed[,] or withheld from the [FAA] required information that is material and relevant to the performance or the maintenance or operation of such aircraft . . . ." While Pilots have not made any claims that Cessna knowingly misrepresented, concealed, or withheld information from the FAA in this case, we believe this language within GARA (that would exempt a manufacturer from the immunity that it is granted under GARA for misrepresenting, concealing, or withholding information regarding the airworthiness or maintenance of the plane) would suggest that Congress considered the service manual--which the manufacturer is required to create under federal regulations --a part or component of the aircraft under GARA's limitation period.

¶19 To determine that maintenance or service manuals are not a part covered by GARA's limitation period would make interpretation of that portion of GARA providing an exclusion from immunity due to the manufacturer's misrepresenting, concealing, or withholding information regarding the maintenance of the aircraft absurd, something we must avoid. See Ledbetter v. Okla. Alcoholic Beverage Laws Enf't Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172, 179 ("Statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits."). "In ascertaining the Legislature's intent, a court looks 'to each part of an act, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural and absurd consequences of any particular interpretation.'" Okla. Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119, ¶ 16, 390 P.3d 689, 694 (quoting Blevins v. W.A. Graham Co., 1919 OK 147, ¶ 8, 72 Okla. 308, 182 P. 247, 248). Looking at each part of GARA, we find a service manual is included within the limitation period provided in GARA.

C. GARA Rolling Provision

¶20 Finally, we must answer the question of whether issuing or failing to issue a new service manual re-starts the GARA tolling period. To this point, we find two 9th Circuit cases helpful, Caldwell and Lyon. In Caldwell, the plaintiffs contended, "under theories of strict liability and negligence, that the revised manual itself is the defective product that caused the accident." Caldwell v. Enstrom Helicopter Corp., 230 F.3d 1155, 1157 (9th Cir. 2000). The Caldwell court found:

A revision to the manual does not implicate GARA's rolling provision, however, unless the revised part "is alleged to have caused [the] death, injury, or damage." GARA § 2(a)(2). Just as the installation of a new rotor blade does not start the 18--year period of repose anew for purposes of an action for damages due to a faulty fuel system, a revision to any part of the manual except that which describes the fuel system would be irrelevant here. Furthermore, mere cosmetic changes (like changing the manual's typeface) do not revive the statute of repose. In sum, if Defendant substantively altered, or deleted, a warning about the fuel system from the manual within the last 18 years, and it is alleged that the revision or omission is the proximate cause of the accident, then GARA does not bar the action.

Caldwell, 230 F.3d, at 1158. In this case, Cessna failed to revise the service manual to include the new cap over 18 years ago, when it fabricated the cap. In Lyon, the 9th Circuit clarified the holding from Caldwell. The Lyon plaintiffs were attempting "to argue that a failure to warn about a newly perceived problem also amounts to something like replacement of a component part because it breaches an alleged continuing duty to upgrade and update." Lyon v. Agusta S.P.A., 252 F.3d 1078, 1088 (9th Cir. 2001), as amended (July 9, 2001). The court stated

We do not agree. Were that so, GARA would have little value to manufacturers because the plaintiff could always argue that an 18--year period commenced if the manufacturer did nothing at all, while simultaneously arguing that if the manufacturer did do something that, too, would start a new 18--year period running. That is not the law, and in Caldwell we alluded to the fact that a revision to a manual was quite different from a failure to warn. [Caldwell, 230 F.3d,] at 1157. What we alluded to there, we reify here: a failure to warn is decidedly not the same as replacing a component part with a new one. It does not allow the Survivors to bypass the GARA bar.

Lyon, 252 F.3d, at 1088 (emphasis added).

¶21 Pilots' allegations in this case are similar to those in Lyon, essentially they claim that Cessna's alleged negligence in failing to update the service manual to include the new part was the cause of their injury and thus they are outside GARA. We disagree. More than 18 years prior to the crash Cessna failed to add the new part to the service manual at all. The time period for the statute of repose for failing to include the installation instructions for the new part in the service manual ran with the part itself. Therefore, the statute of repose prohibited claims after June 2001.

IV. CONCLUSION

¶22 We find that a claim for negligent failure to revise a service manual is subject to GARA. We hold that Cessna created the Cessna 172RG service manual in its capacity as a manufacturer, the service manual is included within the limitation period provided in GARA, and Cessna did not add or omit anything to the service manual which was a proximate cause of the accident in order to re-start the GARA statute of repose. The district court's order granting summary judgment is affirmed.

AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

[1] Pilots asserted that the hydraulic power pack assembly had been replaced in 2006, thus re-starting the statute of repose. See Pls.' Resp. to Mot. for Summ. J., Nov. 7, 2012. And Pilots contended that GARA does not apply to claims based upon maintenance manuals. Id.

Cessna asserted that Cessna did not manufacture a Hydraulic Power Pack subsequent to 1988, twenty-two years prior to the underlying accident, thus placing it beyond the time allowed to file suit under GARA. Supp. to Mot. for Summ. J. of Def. Cessna Aircraft Co., June 19, 2013. The district court denied Cessna's motion for summary judgment, stating "[t]here are material issues of fact regarding relevant dates that would affect pertinent defenses." Order, Sept. 9, 2013.

On September 30, 2015, Cessna filed a renewed motion for summary judgment. Cessna noted that since the last denial of summary judgment, depositions were taken from Pilots, Pilots' experts, Cessna corporate representatives, and the mechanic who performed maintenance on the aircraft, resolving any factual issues. Renewed Mot. for Summ. J. of Def. Cessna Aircraft Co. & Opening Br. in Supp. 1, Sept. 30, 2015. Cessna asserted that it ceased manufacturing single-piston aircraft in 1986. The procedures and illustrations for the removal and installation of a Hydraulic Power Pack remained unchanged in the Service Manual through at least September 28, 2010, although there were various other unrelated edits to the Service Manual. Cessna asserted that in 2006, the aircraft's owner had the hydraulic power pump overhauled and replaced by another company. The mechanic who installed the Hydraulic Power Pack in 2006 testified that he knew that the Cessna Parts Catalog showed a cover for the post on the side of the power pack, but he did not install a cover because the cover was not mentioned in the Service Manual and he followed the Cessna Service Manual for the installation of the power pack assembly. On May 11, 2016, the district court denied Cessna's renewed motion for summary judgment.

On September 12, 2016, Cessna requested the district court bifurcate the GARA issues for trial separate from the merits of the Pilots' claims. On February 2, 2017, the district court agreed to hold an evidentiary hearing on the separate issues related to GARA.

On October 12, 2017, the district court issued a stay in this case until issuance of mandate in Lunn v. Hawker Beechcraft Corp., No. 115,149, 2018 OK CIV APP 12, 417 P.3d 1206 (decided Sept. 29, 2017; mandate issued Mar. 1, 2018) (Lunn I). The district court docket shows that the court held a status conference in November 2017 wherein all parties agreed that Lunn I was too uncertain to be precedential and the court should go ahead and rule on the GARA issue.

The district court found that "the GARA defense is not available in this case as a flight manual for maintenance is not a 'part' under GARA and it is stipulated that Plaintiff's [sic] claim sounds in negligence, not in products liability." Order, Jan. 12, 2018. The court held: "therefore the remaining question, as a matter of law, the Court finds that the GARA defense is unavailable in this context."

On January 26, 2018, Cessna requested the district court certify its January 18 Order for interlocutory review. On January 31, 2018, Cessna filed a motion to reconsider the January 18 Order. Cessna noted that the district court chose to not rely upon the recent Oklahoma Court of Civil Appeals case, Lunn I, 2018 OK CIV APP 12, 417 P.3d 1206 (decided Sept. 29, 2017; mandate issued Mar. 1, 2018), because at the time of the Order, a petition for certiorari regarding Lunn was pending before the Oklahoma Supreme Court. Cessna noted that this Court denied the petition for certiorari ten days after the district court issued its order and asserted that Lunn I was directly relevant to this case. Pilots argued that consideration of Lunn I was still premature because mandate had not yet issued. In reply, Cessna argued that while mandate had not yet issued, according to the Oklahoma Supreme Court Rules, there was no longer discretion to deny mandate after certiorari was denied. On March 21, 2018, the district court denied the motion to reconsider and granted Cessna's motion to certify the appeal. On April 18, 2018, the district court filed an order certifying the January 18 Order for interlocutory appeal.

Cessna filed a petition for certiorari certified interlocutory order on April 20, 2018 (No. 116,946). This Court denied certiorari certified interlocutory order on May 21, 2018.

On February 19, 2019, Cessna filed a motion to clarify the January 18, 2018 Order or reconsider. The district court denied that motion on April 30, 2019.

On April 13, 2022, Cessna filed a Renewed Motion for Judgment as a Matter of Law Based on New GARA Case Law. Cessna argued that two new opinions regarding GARA had been decided within the past few weeks, one of which was an unpublished opinion from the Oklahoma Court of Civil Appeals. On June 16, 2022, the district court denied the motion to reconsider.

[2] GENERAL AVIATION REVITALIZATION ACT OF 1994

AN ACT to amend the Federal Aviation Act of 1958 to establish time limitations on certain civil actions against aircraft manufacturers, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

SECTION 1. SHORT TITLE.

This Act may be cited as the "General Aviation Revitalization Act of 1994".

SEC. 2. TIME LIMITATIONS ON CIVIL ACTIONS AGAINST AIRCRAFT MANUFACTURERS.

(a) IN GENERAL.--Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred--

(1) after the applicable limitation period beginning on--

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

(b) EXCEPTIONS.--Subsection (a) does not apply--

(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered;

(2) if the person for whose injury or death the claim is being made is a passenger for purposes of receiving treatment for a medical or other emergency;

(3) if the person for whose injury or death the claim is being made was not aboard the aircraft at the time of the accident; or

(4) to an action brought under a written warranty enforceable under law but for the operation of this Act.

(c) GENERAL AVIATION AIRCRAFT DEFINED.--For the purposes of this Act, the term "general aviation aircraft" means any aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration, which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 passengers, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations as defined under regulations in effect under the Federal Aviation Act of 1958 (49 U.S.C.App. 1301 et seq.) at the time of the accident.

(d) RELATIONSHIP TO OTHER LAWS.--This section supersedes any State law to the extent that such law permits a civil action described in subsection (a) to be brought after the applicable limitation period for such civil action established by subsection (a).

SEC. 3. OTHER DEFINITIONS.

For purposes of this Act--

(1) the term "aircraft" has the meaning given such term in section 101(5) of the Federal Aviation Act of 1958 (49 U.S.C. 1301(5));

(2) the term "airworthiness certificate" means an airworthiness certificate issued under section 603(c) of the Federal Aviation Act of 1958 (49 U.S.C. 1423(c)) or under any predecessor Federal statute;

(3) the term "limitation period" means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft; and

(4) the term "type certificate" means a type certificate issued under section 603(a) of the Federal Aviation Act of 1958 (49 U.S.C. 1423(a)) or under any predecessor Federal statute.

SEC. 4. EFFECTIVE DATE; APPLICATION OF ACT.

(a) EFFECTIVE DATE.--Except as provided in subsection (b), this Act shall take effect on the date of the enactment of this Act.

(b) APPLICATION OF ACT.--This Act shall not apply with respect to civil actions commenced before the date of the enactment of this Act.

General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, Aug. 17, 1994, 108 Stat. 1552, 49 U.S.C. 40101 note.

[3] Appendix A to Part 23--Instructions for Continued Airworthiness:

. . . .

A23.2 Format

(a) The Instructions for Continued Airworthiness must be in the form of a manual or manuals as appropriate for the quantity of data to be provided.

(b) The format of the manual or manuals must provide for a practical arrangement.

A23.3 Content

The contents of the manual or manuals must be prepared in the English language. The Instructions for Continued Airworthiness must contain the following manuals or sections and information:

(a) Airplane maintenance manual or section.

(1) Introduction information that includes an explanation of the airplane's features and data to the extent necessary for maintenance or preventive maintenance.

(2) A description of the airplane and its systems and installations including its engines, propellers, and appliances.

(3) Basic control and operation information describing how the airplane components and systems are controlled and how they operate, including any special procedures and limitations that apply.

(4) Servicing information that covers details regarding servicing points, capacities of tanks, reservoirs, types of fluids to be used, pressures applicable to the various systems, location of access panels for inspection and servicing, locations of lubrication points, lubricants to be used, equipment required for servicing, tow instructions and limitations, mooring, jacking, and leveling information.

(b) Maintenance Instructions.

(1) Scheduling information for each part of the airplane and its engines, auxiliary power units, propellers, accessories, instruments, and equipment that provides the recommended periods at which they should be cleaned, inspected, adjusted, tested, and lubricated, and the degree of inspection, the applicable wear tolerances, and work recommended at these periods. However, the applicant may refer to an accessory, instrument, or equipment manufacturer as the source of this information if the applicant shows that the item has an exceptionally high degree of complexity requiring specialized maintenance techniques, test equipment, or expertise. The recommended overhaul periods and necessary cross reference to the Airworthiness Limitations section of the manual must also be included. In addition, the applicant must include an inspection program that includes the frequency and extent of the inspections necessary to provide for the continued airworthiness of the airplane.

(2) Troubleshooting information describing probable malfunctions, how to recognize those malfunctions, and the remedial action for those malfunctions.

(3) Information describing the order and method of removing and replacing products and parts with any necessary precautions to be taken.

(4) Other general procedural instructions including procedures for system testing during ground running, symmetry checks, weighing and determining the center of gravity, lifting and shoring, and storage limitations.

(c) Diagrams of structural access plates and information needed to gain access for inspections when access plates are not provided.

(d) Details for the application of special inspection techniques including radiographic and ultrasonic testing where such processes are specified by the applicant.

(e) Information needed to apply protective treatments to the structure after inspection.

(f) All data relative to structural fasteners such as identification, discard recommendations, and torque values.

(g) A list of special tools needed.

(h) In addition, for level 4 airplanes, the following information must be furnished--

(1) Electrical loads applicable to the various systems;

(2) Methods of balancing control surfaces;

(3) Identification of primary and secondary structures; and

(4) Special repair methods applicable to the airplane.

A23.4 Airworthiness limitations section.

The Instructions for Continued Airworthiness must contain a section titled Airworthiness Limitations that is segregated and clearly distinguishable from the rest of the document. This section must set forth each mandatory replacement time, structural inspection interval, and related structural inspection procedure required for type certification. If the Instructions for Continued Airworthiness consist of multiple documents, the section required by this paragraph must be included in the principal manual. This section must contain a legible statement in a prominent location that reads "The Airworthiness Limitations section is FAA approved and specifies maintenance required under §§ 43.16 and 91.403 of Title 14 of the Code of Federal Regulations unless an alternative program has been FAA approved."

14 C.F.R. § Pt. 23, App. A, A23.2-A23.4.

[4] The actual date of the creation or issuance of the new part is not in this record; this date is based on the date on the parts manual.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2018 OK CIV APP 12, 417 P.3d 1206, 
LUNN v. HAWKER BEECHCRAFT CORP.
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 117, 764 P.2d 172, 59 OBJ 2936, 
Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed

 
1919 OK 147, 182 P. 247, 72 Okla. 308, 
BLEVINS v. W. A. GRAHAM CO.
Discussed at Length

 
2016 OK 119, 390 P.3d 689, 
OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMAN
Discussed

 
2020 OK 105, 478 P.3d 415, 
THURSTON v. STATE FARM MUTUAL AUTOMOBILE INSUR. CO.
Discussed

 
2021 OK 20, 489 P.3d 20, 
FRATERNAL ORDER OF POLICE v. CITY OF NORMAN
Discussed at Length

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2056, 
Motion for Summary Judgment
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA